| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>City and County Building<br>1437 Bannock Street<br>Denver, CO  80202<br>(720) 865-8301 | DATE FILED: July 27, 2018 4:12 PM<br>FILING ID: A5E697CBCFA06<br>CASE NUMBER: 2018CV32793 |
| **Plaintiff:**<br><br>JORDAN WEST COMPANIES LTD d/b/a US MORTGAGES, a Colorado Limited Liability Company<br><br>v.<br><br>**Defendant:**<br><br>NATIVE RANK, INC.,<br>a Colorado Corporation | **▲ COURT USE ONLY ▲** |
| Harold R. Bruno III, #14945<br>Elizabeth S. Michaels #50200<br>Robinson Waters & O'Dorisio, P.C.<br>1099 18th Street, Suite 2600<br>Denver, CO  80202-1926<br>Telephone:  303-297-2600<br>Facsimile:  303-297-2750<br>E-mail: hbruno@rwolaw.com<br>***Attorney for Plaintiff US Mortgages Corporation*** | Case No.: 2018 CV<br><br>Division |
| **COMPLAINT AND JURY DEMAND** ||

Jordan West Companies LTD d/b/a US Mortgages ("US Mortgages"), by and through its attorneys, Robinson Waters & O'Dorisio, P.C., submits this Complaint against Native Rank, Inc. (the "Defendant") and as grounds therefore, states as follows:

## I. PARTIES

1.      US Mortgages is a Colorado corporation with a business address at 6855 S Havana Street, Suite 500, Centennial, Colorado 80112.

2.     The Defendant is a Colorado corporation located at 1055 Auraria Parkway, Denver, Colorado 80202.  The Defendant can be served at that address through its registered agent, Daniel Dye.

## II.  JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to C.R.S. § 13-1-124, the Defendant being a Colorado corporation.

4.     Venue is proper in this Court pursuant to C.R.C.P. 98(c), as the Defendant has its headquarters in the City and County of Denver.

## III.  GENERAL ALLEGATIONS

5.     US Mortgages is a lender specializing in real estate home loans.

6.     The Defendant claims to be a full-service digital agency delivering complete digital marketing and advertising solutions for businesses of all sizes.

7.     On June 2, 2017, US Mortgages and the Defendant entered into a contract (the "Digital Agreement") whereby US Mortgages promised to pay $15,000 a month over twelve months to the Defendant.

8.     In exchange, the Defendant promised in the Digital Agreement to implement initiatives that increased US Mortgages' digital exposure within online consumer marketplaces, mainly search engines, so as to make US Mortgages relevant to those searching for the products and services offered by US Mortgages, namely, home loans.

9.     In particular, with regard to the Digital Agreement, the Defendant promised to develop and implement a successful digital strategy using multiple digital components that would best benefit US Mortgages' on line home loan business.

674582

10.     Additionally, with regard to the Digital Agreement, the Defendant promised to update and optimize US Mortgages' website or build it a new website to accommodate the digital strategy that the Defendant was supposed to design for US Mortgages.

11.     Further, with regard to the Digital Agreement, as part of US Mortgages' digital solution and strategy being designed by the Defendant, the Defendant was to assure that US Mortgages website was optimized for all of US Mortgages' products, services, categories, locations and service areas so as to ensure US Mortgages' website was properly telling US Mortgages' digital story to consumers and search engines so that US Mortgages would win new customers over its competition.

12.     In the Digital Agreement, the Defendant promised to update, enhance and optimize US Mortgages' "Google My Business" page to improve organic map listing visibility within Google so as to put US Mortgages in front of local consumers searching for home loans.

13.     In the Digital Agreement the Defendant promised to claim, update, enhance and optimize US Mortgages' business listing in at least sixty-five of the most prominent online business directories used by local consumers to find products and services and to otherwise ensure all listings were accurate and consistent with US Mortgages' home loan business.

14.     In the Digital Agreement, the Defendant promised US Mortgages a real-time dashboard that would allow US Mortgages to have access to its digital marketing and advertising performance across all initiatives including a "digital solution" and a monthly summary report.

15.     In the Digital Agreement, the Defendant promised U.S. Mortgages ongoing optimization, management and support through consistent review of data and performance to discover opportunities to improve results.   Among other things, the Defendant promised US

Mortgages to consistently review, optimize and make improvements to ensure optimal performance, to continually adjust website, content and optimization strategy so as to achieve optimal performance and to use off-site proprietary technology to daily tell US Mortgages' digital story in order to provide constant improvement in building a more complete digital landscape.

16.     Finally, in the Digital Agreement, the Defendant promised to be available by e-mail or phone for any questions or support.

17.     Also in 2017, US Mortgages entered into a Paid Search Service Agreement (the "Paid Search Agreement") with the Defendant wherein US Mortgages promised to pay the Defendant $53,000 a month.

18.     In exchange, the Defendant agreed pursuant to the Paid Search Agreement to find a winning formula that met US Mortgages' goals and needs and produced real and measurable results in the form of relevant and qualified traffic to US Mortgages' website resulting in new customers.

19.     Indeed, in the Paid Search Agreement, the Defendant promised to customize for US Mortgages a paid search solution and strategy to meet US Mortgages' goals and make US Mortgages competitive within the search engines.

20.     Further, the Defendant promised US Mortgages in-depth keyword analysis, relevant and positioned keyword performance, service product research, new keyword research and strategy, precise and effective campaign setup, keywords that would attract the most relevant audience, keyword bidding and match type implementation to ensure performance and low cost-per-click expenditures so as to eliminate irrelevant search queries and wasted ad spend.

4

21.     Additionally, in the Paid Search Agreement, the Defendant promised US Mortgages a determination of the most effective campaign bidding strategy, text ad creation to ensure the best chance of obtaining high quality scores, engagement and conversions, a paid search specialist that would test for relevant ad extensions to provide the best conversions, advertising scheduling to ensure that advertisements would be seen only when they had the best chance to convert, setup of goals to measure the effectiveness of traffic sent to the website and the implementation of campaigns to start the optimization process.

22.     During the months that US Mortgages paid the Defendant $68,000 a month, under the Digital Agreement and the Paid Search Agreement, US Mortgages search engine results went down by approximately fifty percent, quality traffic and leads to US Mortgages' traffic to its website decreased to next nothing and reports were intentionally manipulated by the Defendant to give US Mortgage the illusion of increased digital traffic.

23.     Additionally, the Defendant placed unwanted back links, created automatic links to spin content and engaged in key word stuffing all to create the impression of increased traffic when, in actuality, the number of legitimate leads to US Mortgages was decreasing.

24.     In fact, although US Mortgages was providing the Defendant with $53,000 a month for an adwords' campaign, according to sypfu.com -- an independent website that estimates what competitors spend on adwords' campaigns -- the estimated adwords spend during the relevant months in 2017 and 2018 was approximately $829.

### FIRST CLAIM FOR RELIEF
**(Breach of the Digital Agreement)**

25.     US Mortgages incorporates all prior allegations.

674582

26.     US Mortgages performed under the Digital Agreement by paying the Defendant $180,000 in 2017 and 2018.

27.     The Defendant breached the Digital Agreement by failing to implement initiatives that increased US Mortgages digital exposure within online consumer marketplaces, with regard to search engines.  This failure resulted in US Mortgages being less than relevant to those searching for the loans being offered by US Mortgages.

28.     The Defendant breached the Digital Agreement by failing to develop and implement a successful digital strategy that used multiple digital components to benefit US Mortgages' on line business.

29.     The Defendant breached the Digital Agreement by failing to update and optimize US Mortgages' website or build it a new website to accommodate the digital strategy that the Defendant was supposed to design for US Mortgages.

30.     The Defendant breached the Digital Agreement by failing to make sure that US Mortgages' website was optimized for all of US Mortgages' products, services, categories, locations and service areas so as to ensure US Mortgages' website was properly telling US Mortgages' digital story to consumers and search engines.  The result of this failure was that US Mortgages did not win new customers over its competition.

31.     The Defendant breached the Digital Agreement by failing to update, enhance and optimize US Mortgages' "Google My Business" page to improve organic map listing visibility within Google.  The result of this failure was that US Mortgages was not competitively put in front of local consumers searching for home loans.

674582

32.     The Defendant breached the Digital Agreement by failing to claim, update, enhance and optimize US Mortgages' business listing in at least sixty-five of the most prominent online business directories used by local consumers to find home loans and to otherwise ensure all listing were accurate and consistent with US Mortgages' home loan business.

33.     The Defendant breached the Digital Agreement by failing to provide a real-time dashboard that would have allowed US Mortgages to have access to its actual digital marketing and advertising performance across all initiatives including a "digital solution" and a useful monthly summary report.

34.     The Defendant breached the Digital Agreement by failing to provide ongoing optimization, management and support through consistent review of data and performance to discover opportunities to improve results.  Among other things, the Defendant failed to provide US Mortgages consistent review, optimization and improvements to ensure optimal performance, failed to continually adjust website, content and optimization strategy so as to achieve optimal performance and failed to use off-site proprietary technology to daily tell US Mortgages' digital story and otherwise provide constant improvement in building a more complete digital landscape.

35.     Finally, the Defendant breached the Digital Agreement by failing to be available by e-mail or phone for any questions or support.

36.     US Mortgages has been damaged by the Defendant's breaches of the Digital Agreement in an amount to be proved at trial but in no event less than the amounts paid by US Mortgages under the Digital Agreement to the Defendant.

WHEREFORE, US Mortgages requests the relief at the end of this Complaint.

674582

## SECOND CLAIM FOR RELIEF
### (Breach of the Paid Search Agreement)

37.     US Mortgages incorporates all prior allegations.

38.     US Mortgages performed under the Paid Search Service Agreement by paying the Defendant approximately $461,500 in 2017 and 2018.

39.     The Defendant breached the Paid Search Agreement by failing to provide a winning formula that met US Mortgages' goals and needs nor were real and measurable results in the form of relevant and qualified traffic to US Mortgages' website generated.

40.     The Defendant breached the Paid Search Agreement by failing to customize for US Mortgages a paid search solution and strategy to meet US Mortgages' goals and make US Mortgage competitive within the search engines.

41.     The Defendant breached the Paid Search Agreement by failing to provide in-depth keyword analysis, relevant and positioned keyword performance, service product research, new keyword research and strategy, precise and effective campaign setup, keywords that would attract the most relevant audience, keyword bidding and match type implementation to ensure performance and low cost-per-click expenditures that eliminated irrelevant search queries and wasted ad spend.

42.     The Defendant breached the Paid Search Agreement by failing to provide a determination of the most effective campaign bidding strategy, text ad creation to ensure the best chance of obtaining high quality scores, engagement and conversions, a paid search specialist that would test for relevant ad extensions to enable the best conversions, advertising scheduling to ensure that advertisements would be seen only when they had the best chance to convert, setup

674582

of goals to measure the effectiveness of traffic sent to the website and the implementation of campaigns to start the optimization process.

43.     US Mortgages has been damaged by the Defendant's breaches of the Paid Search Agreement in an amount to be proved at trial but in no event less than the amounts paid by US Mortgages under the Paid Search Agreement to the Defendant.

WHEREFORE, US Mortgages requests the relief at the end of this Complaint.

### THIRD CLAIM FOR RELIEF
**(Libel Per Se)**

44.     US Mortgages incorporates all prior allegations.

45.     US Mortgages had a Google My Business page in which the Defendant had access.

46.     Prior to the expiration of the Digital Agreement and the Paid Search Agreement, US Mortgages featured pictures of an upscale home, keys, US Mortgages' home office and a polished wood table with scrabble letters depicting the words "HOME LOAN" all designed to portray US Mortgages as a main stream lender catering to main stream borrowers.

47.     Subsequent to the expiration of the Digital Agreement and the Paid Search Agreement and without the consent of US Mortgages, the Defendant placed on US Mortgages' Google My Business page as the featured photograph a picture of a windowless prefabricated home on a poorly maintained lot that is full of clutter (the "new featured photograph").

48.     The placement by the Defendant of the new featured photograph on US Mortgages' Google My Business page constitutes a publication.

674582

49. The substance and gist of the new featured photograph is that US Mortgages caters to a less desirable segment of the home loan industry than the main stream borrowers that US Mortgages seeks to attract.

50. The publication of the new featured photograph has caused US Mortgages actual damages.

51. The Defendant published the new featured picture either knowing that it portrayed US Mortgages in a false light or with reckless disregard as to whether the new featured picture was representative of a lender that caters to main stream home loans.

WHEREFORE, US Mortgages requests the relief at the end of this Complaint.

## FOURTH CLAIM FOR RELIEF
### (Interference with Prospective Business Relations)

52. US Mortgages incorporates all prior allegations.

53. The Defendant, by virtue of its previous relationship with US Mortgages, had knowledge that US Mortgages was portraying itself on its Google My Business page as a main stream lender that provided home loans to main stream borrowers.

54. With the intent to alter that image and to portray US Mortgages as a less than main stream lender and in order to dissuade potential main stream borrowers from contracting with US Mortgages for their home loan needs, the Defendant placed the new featured photograph on US Mortgages' Google My Business page.

55. The Defendant's placement of the new featured photograph on US Mortgages' Google My Business page was improper in that the Defendant no longer had any contractual relationship with US Mortgages for digital marketing or advertising.

674582

56.     Indeed, the placement of the new featured photograph by the Defendant on US Mortgages' Google My Business page was calculated to harm the future business prospects of US Mortgages.

57.     The Defendant's placement of the new featured photograph on US Mortgages' Google My Business page prevented the formation of lending relationships between US Mortgages and borrowers.

58.     US Mortgages has been damaged by the Defendant's interference with the formation of lending relationships.

59.     The Defendant's interference with the prospective business relations of US Mortgages was willful and malicious.

## FIFTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act)

60.     US Mortgages incorporates all prior allegations.

61.     This claim for relief is made pursuant to C.R.S. § 6-1-101 *et seq.*

62.     By posting the new featured photograph on US Mortgages' Google My Business page, the Defendant engaged in an unfair or deceptive trade practice in that the Defendant knowingly made a false representation as to the characteristics, ingredients, uses and benefits of US Mortgages' products and services and otherwise disparaged the goods and services of US Mortgages.

63.     The Defendant posted the new featured photograph on US Mortgages' Google My Business page in the course of the Defendant's business, vocation, or occupation.

674582

64.     The posting of the new featured photograph on US Mortgages' Google My Business page significantly impacted the public as actual or potential consumers of US Mortgage's home loan products and services.

65.     US Mortgages suffered injury in fact to a legally protected interest.

66.     US Mortgages' injury was a result of the Defendant posting the new featured photograph on US Mortgages' Google My Business page.

WHEREFORE, US Mortgages requests the relief at the end of this Complaint.

## SIXTH CLAIM FOR RELIEF
### (Trade Disparagement under the Statutory Laws of the United States)

67.     US Mortgages' incorporates all prior allegations.

68.     This claim for relief is made pursuant to 15 U.S.C. § 1125(a)(1)(B).

69.     The Defendant's placement of the new featured photograph constitutes a false or misleading description or representation of fact in commercial advertising or promotion.

70.     In particular, the Defendant's placement of the new featured photograph misrepresents the nature, characteristics and qualities of US Mortgages' home loan business.

71.     US Mortgages has been damaged by the Defendant's act of trade disparagement.

72.     The Defendant's actions of trade disparagement were willful and malicious and constitute an exceptional case.

WHEREFORE US Mortgages requests the following:

(A)     Judgment in favor of US Mortgages and against the Defendant for an amount of to be proven at trial;

674582

(B)     Treble damages under either the Colorado Consumer Protection Act or the

        Lanham Act;

(C)     Prejudgment interest;

(D)     Attorneys' fees and costs of suit from the Defendant pursuant to applicable

        contractual provision, rule or statute; and

(E)     Such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

US Mortgages demands a trial to a jury on all claims so triable.

Respectfully submitted this 27th day of July, 2018.

ROBINSON, WATERS & O'DORISIO, P.C.


*/s/ Harold R. Bruno III (original signature on file)*
Harold R. Bruno III
Elizabeth S. Michaels

**Plaintiff's Address**
6855 S Havana Street, Suite 500
Centennial, Colorado 80112