UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

Civil Action No. 18-cv-2165-RM-NRN

JORDAN WEST COMPANIES, LTD, d/b/a
US MORTGAGES, a Colorado limited liability
company,

Plaintiff,

v.

NATIVE RANK, INC., a Colorado corporation,

Defendant.

## SCHEDULING ORDER

1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling/Planning Conference is set for November 20, 2018 at 9:30 am in

Courtroom C205 before Magistrate Judge N. Reid Neureiter.

    a. <u>Plaintiff Jordan West Companies, LTD, d/b/a US Mortgages</u> (hereinafter, "US Mortgages")

        Harold R. Bruno III, Esq.
        Robinson Waters & O'Dorisio, P.C.
        1099 18th Street, Suite 2600
        Denver, Colorado 80202
        (303) 297-2600

    b. <u>Defendants Native Rank, Inc.</u> (hereinafter, "Native Rank")

        Elizabeth H. Getches, Esq.
        Shoemaker Ghiselli + Schwartz LLC
        1811 Pearl Street
        Boulder, Colorado 80302
        (303) 530-3452

2.     STATEMENT OF JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441 as some of the claims against Defendant arise under federal law. Specifcally, Plaintiff alleges Trade Disparagement under 15 U.S.C. § 1125(a)(1)(B).

3.     STATEMENT OF CLAIMS AND DEFENSES

a) Plaintiff's Statement:

On June 2, 2017, the Parties entered into two marketing agreements: a Digital Solution Service Agreement and a Paid Search Service Agreement (collectively, the "Agreements"). The Agreements required Native Rank to implement initiatives that would increase US Mortgages' digital exposure to its target audience – home loan consumers. In return, US Mortgages would pay Native Rank $68,000.00 per month. Despite receiving over $641,500.00 from US Mortgages since June 2017, Native Rank has failed to abide by the Agreements.

Under the Agreements, Native Rank promised to utilize and implement dozens of components to improve and optimize US Mortgages' digital presence. Each of these components were "important to US Mortgages' success online." *See, Digital Service Agreement*, at 1. Native Rank promised, among other components, to: develop and implement a digital strategy that will best benefit US Mortgages' business in succeeding online; to optimize US Mortgages' website or build a new website to accommodate the digital strategy; to implement local SEO to increase organic search rankings; to update, enhance and optimize US Mortgages' "Google My Business" page to improve organic map listing visibility within Google; to update, enhance and optimize US Mortgages' business listing in at least sixty-five of the most prominent online business directories used by local consumers; to provide in-depth keyword analysis to ensure precise targeting to attract

the most relevant audience; to place optimal keyword bidding and match type implementation to ensure performance and low cost-per-click expenditures to eliminate irrelevant search queries and wasted ad spend; and to provide the most effective campaign bidding strategy and text ad creation to ensure the best chance of obtaining high quality scores, engagement, and conversions. *See, Digital Solution Service Agreement,* at 1-3; *Paid Search Service Agreement,* at 1-3.

Native Rank failed to utilize and implement many components required under the Agreements; and the few components actually utilized were not done competently. This caused US Mortgages' digital presence to plummet. US Mortgages search engine results went down by approximately fifty percent, the quality of leads diminished, and US Mortgages' website traffic declined. Native Rank breached the Agreements by failing to implement the promised components.

Native Rank further breached the Paid Search Service Agreement by mismanaging US Mortgages' AdWord Campaign. Under the Paid Search Service Agreement, US Mortgages gave Native Rank $53,000 a month for a Google AdWords Campaign. Native Rank promised to "implement the most efficient account structure to ensure budget can be managed effectively;" "ensure low cost-per-click;" and "eliminate wasted ad spend." *Paid Search Service Agreement,* at 2. Upon information and belief, Native Rank spent only a fraction of the $53,000/month on AdWords. Even if Native Rank utilized the $53,000/month on AdWords it was not done competently. Following the Agreements, the volume and quality of US Mortgages' leads declined. Aggravating matters, Native rank hid the declining results by placing unwanted back links and engaging in key-word-stuffing to create the false impression of increased traffic.

3

Finally, Native Rank either neglected or deliberately sabotaged US Mortgages' "Google My Business Page." Native Rank managed US Mortgages' page. Native Rank agreed to claim, update, enhance, optimize, and "consistently review" the page to ensure US Mortgages "achieves online success." *Digital Solutions Service Agreement,* at 2, 3. Prior to the Agreements, US Mortgages' page displayed photos of an upscale home, keys, US Mortgages' home office, and a polished wood table with scrabble letters depicting the words "HOME LOAN" - all designed to portray US Mortgages as a main stream lender catering to main stream borrowers. However, Defendant changed the photo to depict US Mortgages in a poor light. Prior to the expiration of the Agreements, Defendant placed and failed to remove a picture of a windowless prefabricated home on a poorly maintained lot full of clutter. This photo was predominantly displayed as the "featured" photograph on US Mortgages' page. The substance and gist of the new featured photograph is that US Mortgages caters to a less desirable segment of the home loan industry than the main stream borrowers that US Mortgages seeks to attract.

Native Rank knew that the Google My Business page was a consumer-facing platform widely visible to thousands of US Mortgages' target consumers. Native Rank further knew that US Mortgages and perspective consumers use the page to connect and initiate business relations. Native Ranks' publication of the featured photo, and its failure to remove the featured photo, constitute a breach of the Agreements, interference with prospective business relations, libel per se, trade disparagement, and violations of the Colorado Consumer Protection Act.

Defendant's Statement:

Plaintiff asserts six claims for relief against Defendant Native Rank: two breach of contract claims (Breach of Digital Agreement and Breach of Paid Search Agreement) and four business

4

tort claims (Libel Per Se, Interference with Prospective Business Relations, Violation of the Colorado Consumer Production Act, and Trade Disparagement). Plaintiff's breach of contract claims are generally based on Native Rank's alleged failure to generate business and increase traffic to Plaintiff and its tort claims are based on Native Rank's alleged placement of a disparaging photograph on Plaintiff's website causing perceived damage to its business and reputation. Plaintiff's breach of contract claims fail because Native Rank performed its duties under the parties' contracts and the evidence will show that traffic increased due to Native Rank's involvement. Plaintiff's tort claims fail because Native Rank did not upload the allegedly defamtory photograph on Plaintiff's website, Plaintiff had equal control over the placement or removal of photographs on its website, the photograph was on Plaintiff's website for a minimal amount of time, and Plaintiff cannot prove any alleged damage or loss of business or reputation was caused by the placement of the photograph.

4. UNDISPUTED FACTS

The following facts are undisputed:

 a) US Mortgages is a lender specializing in real estate home loans.
 b) Native Rank is a digital marketing and advertsing agency.
 c) On June 2, 2017, US Mortgages and Native Rank entered into the Digital Solution Service Agreement.
 d) On June 2, 2017, US Mortgages and Native Rank entered into the Paid Search Service Agreement.

5

5. COMPUTATION OF DAMAGES

   Plaintiff:

   On its breach of contract claim, at least the $641,500 paid to Native Rank plus prejudgment interest. US Mortgages anticipates using an expert to calculate damages to its business from the harm caused by Native Rank to the business and seeks its attorney fees and costs, as well as pre- and post-judgement interest, pursuant to applicable rule, statute, or contractual provision. US Mortgages may seek punitive or exemplary damages based on information learned as discovery proceeds in this matter.

   On its claims for Libel Per Se, Interference, and Trade Disparagement, US Mortgages seeks damages for lost business and lost profits, impairment of reputation and good will, loss of competitive position, and treble damages under the Lanham Act.

   On its claim for violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 et seq., US Mortgages seeks damages for lost business and lost profits, impairment of reputation and good will, loss of competitive position, and other damages. US Mortgages also seeks treble damages pursuant to C.R.S. 6-1-113(2).

   Defendant: Native Rank seeks attorneys' fees and costs to the extent permitted by applicable law.

6. REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed.R.Civ.P. 26(f)

   a. Date of Rule 26(f) meeting: October 31, 2018.

b. Names of each participant and each party represented: Harold R. Bruno III, attorney for Plaintiff US Mortgages; Liza Getches and Vanya Akraboff, attorneys for Defendant Native Rank.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made (*FRCP 26(a)(1)(C) - at or within 14 days after the parties' Rule 26(f) conference*): The parties will exchange their initial disclosures on November 13, 2018.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1): None.

e. Statement concerning any agreements to conduct informal discovery: None.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system: The parties will employ a unified exhibit numbering system.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form: The parties believe that the claims and defenses will involve a moderate amount of electronically stored information. The parties have taken the following steps with respect to such information:

Plaintiff's Statement:

i. Plaintiff has been advised by counsel that it is to preserve and maintain any materials, including all documents and records in hard copy and electronic form, which in any way may be relevant or relate to the matters at issue in this lawsuit.

    ii.    Plaintiff will provide electronic versions of their discovery where feasible, each with an identifiable bates label.

    iii.    Plaintiff's counsel plans to engage in discussions with Defendant's counsel in order to avoid discovery disputes relating to electronic discovery.

    iv.    Plaintiff plans to utilize their internal resources and services of their counsel to facilitate discovery of electronically stored information. Plaintiff plans to produce documents in readable electronic form to the extent possible to limit associated discovery costs.

Defendant's Statement:

    i.    Defendant has been advised by counsel that it is to preserve and maintain any materials, including all documents and records in hard copy and electronic form, which in any way may be relevant or relate to the matters at issue in this lawsuit.

    ii.    Defendant will provide electronic versions of their discovery where feasible, each with an identifiable bates label.

    iii.    Defendant's counsel plans to engage in discussions with Plaintiff's counsel in order to avoid discovery disputes relating to electronic discovery.

    iv.    Defendant plans to utilize their internal resources and services of their counsel to facilitate discovery of electronically stored information. Defendant plans to produce documents in readable electronic form to the extent possible to limit associated discovery costs.

    h.    Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case: The parties discussed settlement and early resolution options, as well as formal mediation options at the 26(f) conference of counsel.

7. CONSENT

The parties have not consented to the exercise of jurisdiction of a magistrate judge.

8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: ~~No modification.~~ Each side shall be limited to 7 depositions.

~~a.~~b. Limitations which any party proposes on the length of depositions: No modification from Fed. R. Civ. P. 30(d)(1), which limits each deposition to one day of seven (7) hours.

~~b.~~c. Limitations which any party proposes on the number of requests for production and/or requests for admission: No modification.

~~c.~~d. Other Planning or Discovery Orders: None at this time.

9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: December 31, 2018.

b. Discovery Cut-off (*Fed. R. Civ. P. 16(3)(A) scheduling order shall "limit the time to … complete dsicoverly"*): June 28, 2019.

c. Dispositive Motion Deadline: July 31, 2019.

d. Expert Witness Disclosure:

i. The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff's Disclosure: Plaintiff may designate a damages expert and a digital marketing expert.

9

        <u>Defendant's Disclosure</u>: Native Rank will designate rebuttal experts and/or a digital marketing expert. Native Rank may designate a mortgage industry expert.

    ii.    Limitations that the parties propose on the use or number of expert witnesses: ~~The parties~~
    ~~iii.~~
~~shall endorse only one expert per subject matter and attempt to utilize experts who are qualified in more than one area, to the extent possible.~~ <u>Each side shall be limited to 2 expert witnesses, absent leave of court.</u>

    ~~iv.~~<u>ii.</u>

    ~~v.~~<u>iii.</u>    The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: June 1, 2019.

    e.    Identification of Persons to Be Deposed:

    <u>Plaintiff's Identification:</u> Plaintiffs will conduct the depositions of key current and former employees of Defendant; members of the public who have been mislead about US Mortgages' services and products; Defendant's experts; and other individuals with knowledge of material facts.

    <u>Defendant's Identification</u>: Native Rank will depose a corporate representative of Plaintiff, a representantive of Google My Business, and depositions of individuals Plaintiff identifies as having not conducted business with Plaintiff due to the photograph placed on Plaintiff's website.

    f.    Deadline for Interrogatories:   Thirty-five (35) days before the end of the discovery cut off.

    g.    Deadline for Requests for Production of Documents and/or Admissions: Thirty-five (35) days before the end of the discovery cut off.

10.    DATES FOR FURTHER CONFERENCES

a. A settlement conference will be held on_____N/A_____at_____ o'clock____.m. It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

( ) *Pro se* parties and attorneys only need be present.

( ) Pro se parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel. If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

( ) Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before_____outlining the facts and issues, as well as the strengths and weaknesses of their case.

b. Status conferences will be held in this case at the following dates and times: March 20, 2019 at 10:00 AM

c. A final pretrial conference will be held in this case on _September 25, 2019_____ at__9:30 AM_____o'clock___.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than five (5) days before the final pretrial conference.

11. OTHER SCHEDULING MATTERS

   a. <u>Discovery or Scheduling Issues Upon Which Counsel Could Not Agree</u>: None.

   b. <u>Anticipated Length of Trial</u>: Five (5) day jury trial.

12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon motion showing good cause and order extended thereon.

DATED this  20th  day of November , 2018.

BY THE COURT

*N. Reid Neureiter*
United States Magistrate Judge

RESPECTFULLY SUBMITTED:

| ROBINSON WATERS & O'DORISIO, P.C. | SHOEMAKER GHISELLI + SCHWARTZ LLC |
|---|---|
| */s/Nicholas F. Labor* | */s/Elizabeth H. Getches (with approval NFL)* |
| Harold R. Bruno III, Esq. | Elizabeth H. Getches, Esq. |
| Nicholas F. Labor, Esq. | Vanya P. Akraboff, Esq. |
| Robinson Waters & O'Dorisio, P.C. | Shoemaker Ghiselli + Schwartz LLC |
| 1099 18th Street, Suite 2600 | 1811 Pearl Street |
| Denver, CO 80202 | Boulder, Colorado 80302 |
| Telephone: (303) 297-2600 | (303) 530-3452 |
| Facsimile: (303) 297-2750 | *Counsel for Defendant* |
| E-mail: hbruno@rwolaw.com | |
| *Counsel for Plaintiff* | |